Petition of Fried-El Corporation etc. Fried-El Corporation, Appellant.

Fried-El Corporation *v.* Borough of Monroeville. Municipality of Monroeville, Appellant.

Argued March 16, 1984, before Judges CRAIG, BARRY and PALLADINO, sitting as a panel of three.

494

*Harvey E. Robins*, with him *Arnold M. Epstein, Brennan, Robins & Daley,* for appellant.

*Gary T. Zolyak*, with him, *John D. Finnegan,* for appellee.

OPINION BY JUDGE CRAIG, April 12, 1984:

In these consolidated appeals, Fried-El Corporation and Monroeville appeal from two decisions of the Court of Common Pleas of Allegheny County concerning Fried-El's request for a street vacation. The is-

sues for our determination are whether the trial court erred (1) in requiring Fried-El to request the vacation from Monroeville before resorting to the court or (2) in determining that Monroeville's council abused its discretion when it denied Fried-El's request to vacate the public way.

Fried-El Corporation owns property abutting an area formerly part of a state highway in Monroeville, which was a borough during the period involved here. By letter dated April 8, 1947, the Secretary of Highways informed Patton Township, Monroeville's predecessor, that the Commonwealth was abandoning a part of the state highway located within the township. The letter also indicated that the property would then revert "as a public highway to the jurisdiction of the officials in [the] township."

According to a stipulation filed in the first of these two cases, neither the township nor Monroeville has ever undertaken to maintain or use that portion of the abandoned segment which abuts property now belonging to Fried-El. The paved section of the property is now completely covered with earth. The remnant of the former highway is not visible, and no one uses the abandoned section for access to other areas.

Fried-El, in the first case here, petitioned the court of common pleas for the appointment of viewers to consider its request to vacate that part of the old state highway which the Commonwealth had abandoned. The viewers filed a report, finding that the property belonged to Fried-El "free and clear of any public highway right-of-way." Upon Monroeville's appeal, the court of common pleas determined that Fried-El's petition for the appointment of viewers had been premature and that the court was without power to order the vacation of the property until Fried-El, in com-

pliance with the Borough Code,[1] petitioned Monroeville to vacate the street.

Fried-El appealed the court's decision in the first case to this court, and also petitioned Monroeville to vacate the property. The municipal council denied the petition. On Fried-El's appeal pursuant to the Borough Code, the court of common pleas reversed the denial, concluding that the council had abused its discretion in declining to vacate the property. Thus, Monroeville has appealed the trial court's second decision.

### Authority to Vacate

With respect to the trial court's first order, Fried-El contends that requiring it to request a vacation from the municipality was error because the statutes and case law, upon which the trial court based its opinion, do not apply to the present case.

As Judge SILVESTRI's capable opinion recognizes, this case requires interpretation of both the State Highway Law[2] and the Borough Code. Section 210 of the State Highway Law, 36 P.S. §670-210, empowers the Secretary of Highways to change the location of any state highway and to abandon the former segments of the highway when the relocation is accomplished. That is precisely the action which the Secretary of Highways described in his letter to Patton Township in 1947. The State Highway Law also provides, in section 214, 36 P.S. §670-214, that in the event of abandonment, the former state highway "shall be maintained by, and at the expense of, the township, borough . . . wherein it is located . . . ."

---

[1] Sections 1741, 1742 of The Borough Code, Act of February 1, 1966, P.L. (1965) 1656, *as amended*, 53 P.S. §§46741, 46742.

[2] Sections 101-1102 of the State Highway Law, Act of June 1, 1945, P.L. 1242, *as amended*, 36 P.S. §§670-101—670-1102.

Judge Silvestri observed:

Upon abandonment of the sections of former Route 187, the maintenance and control of the sections reverted to Monroeville. An abandoned section becomes a highway, road or street of the municipality. The fact that the local municipality does not maintain the same, as is indicated here, does not divest the local municipality of its jurisdiction over this section or result in a de facto vacation of the section.

The Borough Code sets forth the procedure which one who seeks a street vacation must follow. Section 1741 of the Borough Code, 53 P.S. §46741,[3] gives a borough the authority to vacate streets and section 1742, P.S. §46742,[4] provides that property owners may petition the borough council to vacate a street upon which their property abuts. Judge Silvestri's opinion required Fried-El to follow that procedure.

However, Fried-El argues, based on section 3 of the Act of February 27, 1849, P.L. 90, *as amended,* 36 P.S. §2131, that the court had exclusive jurisdiction to vacate the former highway. But that section, a part of the General Public Road Law, merely authorizes owners to reclaim property when a highway or street has been vacated.[5] Because there has been no pre-

---

[3] Section 46741 provides, in relevant part:

Any borough shall have authority, by ordinance, to vacate or close any street or portion thereof previously opened or laid out. . . .

[4] Section 46742 provides, in relevant part:

Any person or persons constituting a majority in number and interest of the owners of the real estate abutting upon any street . . . may petition the council to vacate such street. . . .

[5] Section 3 provides, in relevant part:

Whenever any highway . . . shall be vacated . . . the adjoining owner or owners shall be authorized to reclaim the same. . . .

vious vacation action in this case, that section is clearly inapplicable.

With respect to section 1741 of the Borough Code, Fried-El contends that it does not apply here because Fried-El owns all of the property abutting the former highway section, and, therefore, the street vacation would not affect any other property owners. We note, however, that the statute does not excuse compliance with the Code's requirements when but one property owner is involved; for that reason, we must reject Fried-El's position.

Fried-El also asserts that requiring it to petition the borough for vacation was a "frivolous exercise and a waste of Appellant's time and money, a waste of the court's judicial time and unreasonably unfair to Appellant." That contention, more properly addressed to the legislature, reflects only Fried-El's opinion of the present statutory framework. We must follow the law as it exists, not reconstruct it in response to a litigant's criticism.

Fried-El also advances an estoppel theory, arguing, in effect, that after thirty years of "abandonment", the borough should be estopped from asserting any interest in the former roadway. To support the proposition that a borough may forfeit its interest in property by inaction, Fried-El was unable to offer any authority which postdates the effectiveness of the current Borough Code.[6]

We concur with Judge SILVESTRI that the outcome here turns on the interpretation of sections 210 and 215 of the State Highway Law, 36 P.S. §§670-210 and

---

[6] Fried-El also contends that the doctrine of laches should prevent the borough from asserting any interest in the property. However, Fried-El failed to cite any authority, other than a case which preceded the enactment of the Borough Code, to support its contention.

670-215. In *Turkey Run Fuels, Inc. Appeal*, 173 Pa. Superior Ct. 76, 95 A.2d 370 (1953), the Superior Court determined that section 210, the more general of the two provisions, gives the secretary of highways the power to vacate or abandon a state *highway*, and that section 215, a subsequent and more specific provision, creates an exception to that general rule: when the portion of the state highway which is no longer necessary was formerly a state *road*, the court of quarter sessions, not the secretary, has exclusive jurisdiction over its vacation.

Although the record does not reveal whether this property had been a state road before it was incorporated into the state highway system, we nevertheless must affirm Judge SILVESTRI's decision. If the area had never been a state road, the abandonment by the action of the secretary in 1947 caused it to be transferred, through section 214 of the State Highway Law, to the jurisdiction of the local governmental body, so that Borough Code sections 1741 and 1742, described above, accordingly would apply the requirement that the abutting landowner petition the borough council to vacate the street.

In the event that the property had been a state road, we face the same situation that confronted the Superior Court in *Turkey Run*. The property there had been a state road, was incorporated into the state highway system, and later was detached from that system when the state highway was relocated. The Superior Court determined that, although section 215 of the State Highway Law gives the court *jurisdiction* to vacate the former state road and highway, the court was without *power* to do so until the borough council, pursuant to the then applicable section of the Borough Code (concerning streets with one terminus outside the borough) consented to the vacation.

We agree with Judge SILVESTRI's conclusion that section 215 of the State Highway Law "must be read in conjunction with the Borough Code when the petition is to vacate a road, or portions thereof, located in a borough," and we conclude that the trial court did not err in requiring Fried-El to comply with sections 1741 and 1742 of the Borough Code.

## Abuse of Discretion

In its cross-appeal, Monroeville contends that the trial court erred, in the second decision, by determining that the council had abused its discretion when it denied Fried-El's request for street vacation.

In his opinion for the trial court, with respect to that second decision, Judge, now Mr. Justice, PAPADAKOS accurately restated the general proposition that a reviewing court will not inquire into the wisdom of municipal actions, and that judicial intervention is proper only where the local governmental body has abused its discretion or committed some clear violation of law. City of Altoona, 479 Pa. 252, 388 A.2d 313 (1978). The trial court then set forth a "general standard" for the determination of whether an abuse of discretion has occurred, and, after applying that test to the present case, concluded that the borough council had "totally ignored the facts before it" and was therefore guilty of an abuse of discretion.

However, the trial court employed an abuse of discretion standard from a 1932 Supreme Court case, Mielcuseny v. Rosol, 317 Pa. 91, 176 A. 236 (1932), which involved the question of whether a trial court, not a municipality, had abused its discretion in refusing to open a judgment. That case did not involve municipal law. Research discloses no case in which a court has, by finding an abuse of discretion, reversed

a municipal decision concerning the vacation of a street.[7]

Additionally, the trial court set forth the following standard for determining whether the council had acted appropriately:

> In determining an application by property owners to vacate a street which traverses their property, the final test is whether the public interest will be best served by vacating the road in question. In making such a determination, the burden is on the petitioners to show that no public interest will be served by not vacating the road, or in the alternative that its vacation will be beneficial to the public interest.

In view of the presumption[8] that the municipal officers acted properly, such a placement of the burden upon the applicant was sound.[9] The trial court determined that Fried-El had clearly met that burden, and that the council therefore had abused its discretion.

The significant problem, however, is that the trial court had absolutely no factual record on which to base the abuse-of-discretion conclusion. The trial court's opinion specifically states that the trial court received no evidentiary record from the municipal council (council minutes not being equivalent to an evidentiary transcript). Fried-El now points only to the stipula-

---

[7] In *City of Altoona*, 479 Pa. 252, 388 A.2d 313 (1978), the Supreme Court affirmed the decision of this court that a city could not both vacate a street and reserve to itself a utility easement; however, neither court questioned the city's street vacation decision.

[8] *Larrecq v. Van Orden*, 21 Pa. Commonwealth Ct. 623, 346 A.2d 922 (1975).

[9] *See, e.g., Weber v. Philadelphia*, 437 Pa. 179, 262 A.2d 297 (1970), where the Supreme Court rejected a challenge to a discretionary act by the City of Philadelphia, on the ground that the record contained no evidence of fraud or other impropriety on the city's part.

tion presented to Judge SILVESTRI in the *earlier* case, but that stipulation antedated the vacation proceedings and hence did not in any way relate to matters such as the municipal council's alleged concern for possibly using the former highway segment to improve an existing nearby intersection.

The absence of an evidentiary record also means that appellate review is impossible. We note that Borough Code §1741 provides that council shall hold a "hearing" upon an application to vacate. Read together with the provision, in the same section, for appeal of the council decision to the court of common pleas, the reference to "hearing" must mean, as in other cases, that the council should create an evidentiary record, so that a verbatim transcript is available for review in the course of the statutory appeal thereby allowed.

In conclusion, the trial court order in the first case will be affirmed. In the second case, the appeal from the refusal of vacation, the trial court order must be reversed. Because the Borough Code hearing requirement appears not to have been previously interpreted, we will remand the second case to the trial court, with the direction that the matter be sent back to the municipal council for the conduct of a hearing, pursuant to the statutory notice, for the development of a proper evidentiary record, unless the trial court would desire to conduct the evidentiary hearing itself.

ORDER IN 50 T.D. 1983

Now, April 12, 1984, the order of the Court of Common Pleas of Allegheny County, dated June 21, 1982, at GD 80-15284, is affirmed, and the order of the Court of Common Pleas of Allegheny County, dated May 3, 1983, at No. SA 698 of 1982, is reversed,

and that case is remanded for further proceedings in accordance with this court's opinion.

Jurisdiction relinquished.

---

ORDER IN 1460 C.D. 1983

Now, April 12, 1984, the order of the Court of Common Pleas of Allegheny County, dated June 21, 1982, is affirmed, and the order of the Court of Common Pleas of Allegheny County, dated May 3, 1983, is reversed.